UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JACOB WEBB, § | |
| § | |
| Plaintiff, § | Civil Action No. 19-4646 |
| § | |
| vs. § | |
| § | A JURY IS DEMANDED |
| HOUSTON COMMUNITY COLLEGE, § | |
| § | |
| Defendant. § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

If the Houston Community College had judged Jacob Webb based on his capabilities, he would now be employed as a sergeant in its police department. Jacob Webb was well-qualified for that position when he applied for that job in the Spring 2017, which the department's Chief of Police recognized when he strongly encourged Webb to accept that job. Webb had just retired from 30 years as a law enforcement officer with the Houston Police Department and his record was superb. He held a Master Peace Officer's Certificate and had served for two years on a highly-selective Fraud Task Force alongside the U.S. Secret Service. He was a qualified law enforcement instructor and had exactly the credentials and skills that HCC needed to provide supervision and leadership to the rank and file officers HCC employed. Despite Webb's superb credentials, modern medical science, and well-established law, the defendant rejected him for one reason–he has diabetes, which he controls with insulin. When HCC's third party contract physician declared Webb unfit for the job because he used insulin to control his diabetes, Webb explained to HCC's Chief of Police that the physician's conclusion was erroneous on a number of fronts: it defied common sense, it ignored medical science, and it constituted a flagrant violation of the Americans with Disabilities Act. But, that did not make any difference to the

defendant; the Chief of Police refused to listen to Webb and refused to even question the lawfulness or accuracy of what this contract physician declared. And he rejected Webb's request to allow another physician, including his own doctor, to provide a written assessment that Webb was qualified to perform the essential functions of a police sergeant with HCC. Instead, HCC's Chief of Police declared that his hands were tied because of HCC's contract with the third party with which that physician was associated. Neither Webb's superior qualifications for the position nor the law were sufficient in HCC's assessment to overcome that doctor's misguided, uninformed, and intransigent conclusion. HCC's rejection of Jacob Webb for a police sergeant's position violated the law, which has long prohibited employers from relying on stereotypes and outdated assumptions about people with disabilities, including diabetes.

## Jurisdiction and Venue

1. This case is brought under the the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*. This Court has jurisdiction of this case according to 28 U.S.C. §§ 1331 and 1343.

2. The defendant is located in Houston, Texas, and rejected Webb's employment application in Houston. Venue is invoked pursuant to 28 U.S.C. § 1391.

## Parties

3. The plaintiff Jacob Webb is an adult resident of Houston, Harris County, Texas.

4. The defendant Houston Community College is a public university system located in Houston, Harris County, Texas. It may be served by serving the Office of its General Counsel, 3100 Main St., 12th Floor, Houston, Texas 77002.

## Statement Of Facts

5. Jacob Webb served the City of Houston as a police officer from March 13, 1986, until January 13, 2017, when he retired. Webb's 30-year record of service with the Houston Police

2

Department ("HPD") is basically blemish-free. During those three decades, he worked patrol, community service, and was a detective for 15 years. In his last two years at HPD, Webb's skills and expertise led to his selection to serve on an elite Fraud Task Force that was conducted jointly with the United States Secret Service.

6. Webb has held a Master Police Officer Certification. And, at the time he applied for a sergeant's position with the HCC Police Department in early 2017, he was also qualified under Texas law as a detective, is a state instructor for peace officers. And, Webb has a bachelor's degree in Criminal Justice and a master's degree in Sociology/Criminology.

**Webb's Application and Interview for the Position**

7. In early 2017, Webb learned from a friend that there was a job opening for a supervisory police sergeant at HCC, information that he confirmed by viewing HCC's website. The position described was one that Webb thought well-suited to his skills and experience as he had specific knowledge of the jurisdiction through his previous experience with HPD.

8. According to the job description issued by HCC, the sergeant's position available at HCC's police department was one that required the applicant be a licensed peace officer, which Webb was. This was a supervisory position to be filled by an experienced law enforcement officer, which Webb most certainly was. As HCC described it, the person who filled the position would be expected to "work[] closely with college administrators and conduct[] criminal investigations as needed." Other essential duties included the requirement to "assess the conduct and quality of your officers' work and recommend positive corrective action when necessary; schedule work assignments; listen and discuss issues; and provide officers with the administrative and technical support they need." Webb had all the necessary skills and expertise to perform those job functions–and more, with or without reasonable accommodation.

9. Webb then submitted his application for the position via the internet. Thereafter, Webb met with a background investigator from HCC's police department, and he signed forms authorizing HCC to obtain copies of his law enforcement employment records from HPD and from the Texas Commission on Law Enforcement ("TCOLE"). That individual also instructed Webb to submit to a physical examination as part of the application process, which was to be conducted by a physician at a private business enterprise, Concerta. He gave Webb blank copies of a TCOLE form L-2. The form was one Webb was to take with him for the physician at Concerta to complete. The L-2 is a TCOLE form completed by a physician whenever a prospective peace officer submits to an approved physical examination.

10. Before meeting with the background investigator, Webb interviewed personally with HCC's Chief of Police Greg Cunningham. During that discussion, Chief Cunningham advised Webb that he needed his help in retaining his officers because a lot of his younger officers were leaving the agency. Webb was impressed; he knew people who worked there as officers and respected them and was confident that he could provide valuable service to HCC.

11. At the conclusion of the interview, Chief Cunningham informed Webb that HCC needed Webb in that position and stated further that he (Cunningham) wanted to "expedite" Webb through the application process.

**Mr. Webb's Physical Examination and the Physician's Conclusion**

12. On March 1, 2017, Webb reported to the business facility operated by Concerta for the physical examination he was ordered to undergo.

13. On information and belief, Concerta is a private enterprise that offers its services to employers for such medically-related services as physical examinations, drug testing, medical surveillance screening, and treatment for on-the-job injuries. According to its website, Concerta

4

specifically advertises its expertise in providing physical examinations for commercial truck drivers – examinations that are carefully regulated by the Department of Transportation.

14. The physician who conducted Webb's physical examination was Dr. Nguyen. Dr. Nguyen had before him Concerta's own form on which the results of a physical examination are recorded, and a blank L-2 form. On information and belief, Dr. Nguyen noted in his records that Webb had no limits ("NL") with regard to all identified physical attributes/abilities–everything from Webb's head, face, and eyes to his lungs, heart, knees, thyroid, cervical spine, and beyond.

15. During the examination, however, Dr. Nguyen asked whether Webb had diabetes and, when Webb responded in the affirmative, Dr. Nguyen asked what type–whether it was type one or type two. After Webb stated that he had type two diabetes, Dr. Nguyen asked whether he controlled it with oral medications and Webb responded "no," explaining that he took insulin injections as needed based on his blood sugar readings.

16. After completing the physical examination, Dr. Nguyen left the examination room, returning a few minutes later. He informed Webb that he could not sign the L-2 form for Webb to be a peace officer because Webb used insulin instead of taking pills to control his diabetes, and then said that Webb could pass out while driving because of low blood sugar, or that he might not be able to eat regularly while working. At first, Webb thought that Dr. Nguyen was kidding him. When Dr. Nguyen said that "no," he was not kidding Webb advised him that he currently held a Master Peace Officers license, that he had just completed 30 years as a police officer with HPD, and that he had not once had any medical problems while driving due to his diabetes.

17. Webb also informed Dr. Nguyen that he believed that the physician's decision violated the law. In response, Dr. Nguyen stated that he did not care who Webb had previously

worked for and refused to engage in any discussion with Webb about either the job he was seeking or the jobs he had previously held.

18. At no time did Dr. Nguyen ask Webb what his duties and responsibilities would be at HCC, and Webb did not have a job description from HCC that he could show Dr. Nguyen. But, Dr. Nguyen told Webb that he had called the HCC police department to ask whether Webb was going to be driving a police car, that he had spoken with Chief Cunningham and his assistant, another HCC employee, Viola Pinesette, and that he had been told that, "yes," Webb would be driving a vehicle as part of his job at HCC.

19. While Webb informed Dr. Nguyen that there was no difference in effect between taking oral medications for his diabetes and using insulin injections to control his blood sugar level, Dr. Nguyen refused to listen. He instead told Webb that, if Webb were to have a wreck in a police car, it would be his [Dr. Nguyen's] responsibility. Dr. Nguyen then refused to sign the TCOLE form L-2.

20. After that frustrating experience, Webb immediately called and spoke with Chief Cunningham, telling him what Dr. Nguyen had said: that he was "disqualified" from the position of peace officer at HCC because he took insulin to control his diabetes. Webb also informed Chief Cunningham that Dr. Nguyen's conclusion was a violation of the law. In response, Chief Cunningham instructed Webb to go get the psychological examination as he had been previously directed to do, so as to have a completed form L-3. When Webb asked Chief Cunningham whether he would allow Webb's own physician to complete the form L-2, Chief Cunningham responded in the negative, saying that if Dr. Nguyen would not "pass" him, then he could not have the job.

21. A day or so later, HCC asked Webb to provide him a copy of his "old L-2." While HCC already had signed authorizations to obtain that record directly, Webb knew that such a document existed in HPD's files and so asked his former employer for a copy of it.

22. On Chief Cunningham's instruction, Webb also submitted to a psychological examination by an individual designated by HCC. At the conclusion of that examination, the licensed professional informed Webb that he had passed the examination, and that a completed form L-3 reflecting the positive results would be immediately forwarded to HCC's police department.

23. Webb personally delivered a copy of the L-2 he obtained from HPD to Chief Cunningham's assistant, Viola Pinesette. When Ms. Pinesette questioned the form, Webb promptly sought a copy from TCOLE, and then forwarded that to her on or about March 9, 2017.

24. On or about March 10, 2017, however, Ms. Pinesette called Webb and informed him that Chief Cunningham had decided to "move on," and that he had offered the sergeant's position to the "next candidate." Webb, in other words, did not get the job.

**Violations of the Americans with Disabilities Act**

25. Webb is a qualified individual with a disability. He was fully qualified for the sergeant's position that he sought with HCC's police department in 2017 and was more than capable of performing that job with or without reasonable accommodation.

26. Webb did not get the sergeant's job at HCC's police department because of his disability, which is a reason that is unlawful under the ADA. No individual is disqualified from a law enforcement position simply because he or she uses insulin to control his or her diabetes. The law requires that individual assessments be made before a person can be denied an

7

employment position simply because he or she has diabetes, and/or simply because of the means the individual chooses to control his or her blood sugar.

27. HCC's requirement that Webb obtain an L-2 form from Concerta attesting to his physical abilities to perform the job he sought at HCC was unlawful. At the time of his application for employment for the sergeant's position at HCC's police department, Webb had been retired from HPD fewer than 180 days. Accordingly, under Texas law at the time, Webb was an individual with less than a 180-day break in service who already held a valid, active license appropriate to the position he sought. As such, it was improper for HCC to even require that Webb submit to a physical examination. HCC's demand that Webb undergo an unnecessary physical examination was an improper demand on the basis of a disability, all without any business necessity. *See* 42 U.S.C. § 12112(b)(3), (b)(6), and (d)(4)(A).

28. The refusal of Dr. Nguyen with Concerta to sign the L-2 form attesting to Webb's physical ability to perform the job of a sergeant with HCC's police department is unlawful. And, HCC's reliance on the position stated by Dr. Nguyen is also unlawful. HCC was the employer and Dr. Nguyen's refusal to sign Webb's L-2 form is not something behind which HCC can hide. HCC, as the employer, is responsible for ensuring that its employment decisions, including its hiring decisions, are not unlawful under the ADA. *See* 42 U.S.C. § 12112(b)(2).

29. HCC's illegal acts caused Webb damages, including economic and compensatory damages such as mental anguish and the loss of enjoyment of life.

30. HCC's conduct violates the Americans with Disabilities Act, which prohibits discrimination in employment on the basis of disability. Nor can HCC contract out of its obligations under the ADA by allowing Concerta's physician to subject individual applicants for employment to engage in discrimination that violates the ADA. 42 U.S.C. § 12112(b)(2). The

ADA defines disability discrimination as participating in a contractual arrangement that results in disability discrimination. *Id*. The ADA also defines unlawful discrimination as utilization of qualification standards that screen out or tend to screen out those with disabilities. HCC has violated these provisions be contracting out fitness for duty decisions and by using qualifications standards that screen out those with disabilities.

31. Webb timely filed a charge of discrimination to challenge the disability discrimination he suffered by HCC, and the EEOC issued a letter authorizing Webb to file a lawsuit against HCC based on that charge of discrimination. Webb timely files this lawsuit after receipt of that right to sue letter.

## **Damages**

32. The damages suffered by the plaintiff include actual and compensatory damages for the injuries suffered at the hands of the defendant, including, but not limited to, economic and compensatory damages.

## **Relief Requested**

The plaintiff asks this court to enter a judgment:

1. Declaring that the acts and practices complained of in this Complaint are in violation of the Americans with Disabilities Act;

2. Enjoining and permanently restraining these violations of law;

3. Directing the defendant to pay the plaintiff actual and compensatory damages that he suffered, past and future, in an amount to be determined;

4. Providing further equitable relief to clear the plaintiff's record, and to ensure that HCC does not violate the legal rights of other applicants for employment;

5. Awarding the plaintiff pre-judgment interest on the amounts owed at the maximum rate allowed by law;

6. Awarding the plaintiff the costs of this action, together with reasonable attorneys' fees and expert witness fees;

7. Awarding the plaintiff post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

8. Awarding plaintiff such other relief, legal or equitable, as may be warranted.

Respectfully submitted,

s/ Margaret A Harris
Margaret A. Harris*
Federal Bar No. 09081400
State Bar No. 87

Paul R. Harris
Federal Bar No. 897365
State Bar No. 24059905

Butler & Harris
1007 Heights Boulevard
Houston, Texas  77008
(713) 526-5677
Fax (888) 370-5038

**\*Attorney in charge for Plaintiff**

Counsel for the Plaintiff